**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza - 16th Floor, Brooklyn, NY, 11201
Tel: (718) 330-1200  Fax: (718) 855-0760

*David E. Patton*
Executive Director and
Attorney-in-Chief

*Eastern District*
Peter Kirchheimer
Attorney-in-Charge

July 7, 2016

**By Hand and ECF**
The Honorable Carol Bagley Amon
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn New York 11201

      Re:    United States v. Paul Montique
                16-CR-65 (CBA)

Dear Judge Amon:

    We submit this letter motion to compel the government to disclose the instructions it provided to the grand jury regarding Count Three of the Indictment, Aggravated Identity Theft, or, in the alternative, for the Court to conduct an *in camera* review of those Grand Jury instructions pursuant to Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure (FRCP).

    The grand jury testimony was disclosed to us as part of the Rule 3500 material which we received Tuesday evening, and is attached here as an exhibit. The testimony raises glaring concerns about whether the grand jury was properly instructed on the elements of aggravated identity theft, as the only evidence presented to them on the element of knowledge was that Mr. Montique *did not* have any knowledge whether the identification information he used or possessed belonged to a real person. I asked the government to disclose the instructions they gave the grand jury on aggravated identity theft, but they refused, citing their office policy and the secrecy of grand jury proceedings. As discussed below, that default need for secrecy should give way where, as in this case, it is outweighed by a particularized need to determine whether an indictment was returned based on incomplete or erroneous legal instructions.

    "The court may authorize disclosure ... of a grand jury matter ... at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before a grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). The government providing incomplete or erroneous legal instruction to a grand jury is a ground to dismiss an indictment. <u>United States v. Hoey</u>, 2014 WL 2998523 (S.D.N.Y. 2014), citing <u>United States v. Brito</u>, 907 F.2d 392, 394 (2d Cir. 1990).

A   "defendant seeking disclosure of grand jury minutes has the burden of showing a 'particularized need' that outweighs the default 'need for secrecy' in grand jury deliberations.'" United States v. Forde, 740 F.Supp.2d 406, 413 (S.D.N.Y.2010) (citing United States v. Moten, 582 F.2d 654, 662 (2d Cir.1978). . Rule 6(e)(3)(E)(ii).

A "particularized need" may be based on proof of misconduct in connection with the grand jury proceedings.  United States v. Smith, 105 F.Supp.3d 255 (W.D.N.Y. 2015). This need may also be based on the fact that secrecy is no longer needed due to the lapse in time between the grand jury proceedings and the present judicial proceeding.  Anilao v. Spota, 918 F.Supp.2d 157, 163 (E.D.N.Y. 2013). Finally, this particularized need may be based on a change in relevant law that is "non-obvious to the reader from the face of the statute." U.S. v. Hoey, 2014 WL 2998523 (S.D.N.Y. 2014).

In Hoey, the Court granted defendant's request for an *in camera* review of grand jury instructions based on a change in law not viewed as evolutionary or incremental, but which created a statutory requirement that may not be obvious to the reader of the statute.  United States v. Hoey, 2014 WL 2998523 (S.D.N.Y. 2014), at *3.  The statute at issue in Hoey was 18 U.S.C. §§ 841(b)(1) (A) and (C), which provide for a 20 year to life sentence if "death or serious bodily injury results from the use of" the controlled substance that was distributed.  See Hoey, 2014 WL 2998523, at *1.  In Burrage v. United States, – U.S. –, 134 S.Ct. 881, 892 (2014),  the Supreme Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under" Section 841(b)(1)(C)'s penalty enhancement provision "unless such use is a but-for cause of the death or injury."

The Hoey Court noted that "there was no controlling precedent in this Circuit on the causation standard prior to Burrage," and also that the "Department of Justice had argued against the standard that the Supreme Court adopted in Burrage."  Thus, the Hoey Court concluded: "The rule in Burrage is not merely an evolutionary development or incremental change, but is a requirement that is non-obvious to the reader from the face of the statute."  Hoey, 2014 WL 2998523, at *3.  The defense therefore had "come forward with more than mere speculation that the grand jury did not receive proper instructions on the 'but-for' causation necessary to trigger the twenty-year mandatory minimum sentence."  Id..  Accordingly, the Court agreed to "conduct an *in camera* review of the instructions provided to the grand jury prior to indictment to ensure that the instructions complied with the 'but-for' requirement of Burrage."  Id. at *1; see also, id., at * 3.

In Flores-Figueroa v. United States, 556 U.S. 646, 647 (2009), the Supreme Court addressed the question of whether the following language in the aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1) – "knowingly, transfers, possesses, or uses, without lawful authority, a means of identification of another person" – meant that the defendant, to violate the statute, must know "that the 'means of identification' he or she unlawfully transferred, possess, or used, in fact, belonged to 'another person.'".  In stating that it had "granted certiorari to consider the 'knowledge' issue," the Court noted that there was a split among the circuits and that the six circuit courts to have addressed the issue were evenly divided.  See id., at 649-50.

2

In the course of its statutory analysis, the Court engaged in a thorough linguistic analysis as to how the word "knowingly" modifies the object "of another person," ultimately rejecting the Government's argument that the statute should not be read as such. Id at 1890, 1891. The Court thus held that "§ 1028A(a)(1) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." Id. at 657. Manifestly, in light of the extensive analysis in Flores-Figueroa and the split in circuit authority that preceded it – this statutory *mens rea* requirement, like the but-for causation requirement in Burrage – " is a requirement that is non-obvious to the reader from the face of the statute." Hoey, 2014 WL 2998523, at *3.

Magnifying the likelihood that the grand jury in this case failed to discern this already non-obvious requirement, and the need to ensure that the instructions they received conveyed it, is that one of the other crimes they were instructed about – the connected offense of passport fraud, 18 U.S.C. § 1542 - has similar and partially overlapping facts and elements. See Exhibit B, Transcript of Status Conference dated June 20, 2016, pp. 11-12, 27-28 (colloquy during Mr. Montique's guilty plea to Count Two regarding overlap of elements with Count Three). That offense, as charged here, requires that Mr. Montique willfully and knowingly used or attempted to use a passport the issuance of which had been secured by reason of one or more false statements, to wit: the use of a false name, date of birth or Social Security number. ECF Doc. 5, Indictment; see 18 U.S.C. § 1542.

The difference between the two as to the required mental state is that the passport fraud requires only that he knew that identification information was not his, while the identity theft requires that he knew as well that it belonged to a real person. As the Court may recall, the subtlety in this distinction caused some confusion in the course of Mr. Montique's allocution when he pled guilty to the passport fraud. See Exhibit B, p. 31-32 (discussing whether Mr. Montique knew the information on the passport was "false")

Significantly, the testimony the grand jury heard about these matters indicates, if anything, that the distinction escaped them altogether. That testimony, by CBP Officer Michael D'Alessandro, established that Mr. Montique presented a U.S. Passport bearing his photograph under the name "Shawn Patterson Scott," but admitted during questioning that his name was actually Paul Montique, and that he had paid someone $10,000 to get him the passport, along with a birth certificate, state ID card, and credit cards in the name Shawn Patterson Scott. Exhibit A, pp. 6, 9-10.

The officer was then asked, "And did the defendant say whether he knew a Shawn Scott - - Patterson Scott was a real person or not?" He answered, "When asked specifically that question, he stated that he did not know if it was a true individual, and he said if it was indeed a real person, he did not know that person." Id. p. 10.

The officer went on to testify that he, the officer, later learned that Shawn Patterson was a "bona fide United States citizen and that the identity information in the passport and the application submitted to secure it belonged to him. Id. p. 12-13.

Hence, the only evidence the grand jury heard relating to the *mens rea* elements

3

of these related offenses was that Mr. Montique knew the passport he attempted to use had been secured by false identity information, that the information did in fact belong to a real person, and that Mr. Montique did not know that it belonged to a real person. This level of knowledge, though sufficient to make out passport fraud, is precisely what the Supreme Court in Flores-Figueroa held was insufficient to convict someone of aggravated identity theft. Given the non-obvious nature of this from the face of the statute, the potentially confusing interplay here between that offense and passport fraud, and the plain incongruence between the specific testimony about Mr. Montique's knowledge and the indictment on Count Three, there is a particularized need to inspect the instructions given to them on that count to ensure that the instructions complied with the *mens rea* requirement of Flores-Figueroa.

Therefore, we ask the Court to compel disclosure of those instructions, or in the alternative, to conduct an *in camera* review under Fed. R. Crim Pro. Rule 6(e)(3)(E)(ii), to determine whether the instructions were incomplete or erroneous and thus require dismissal of the aggravated identity theft count.

Respectfully submitted,

/s/

Kannan Sundaram
Assistant Federal Defender
(718) 330-1203

cc:   Alicia N. Washington
      Assistant U.S. Attorney