TF:ANW
F. # 2016R00146

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -                        Docket No. <u>16–CR–065 (CBA)</u>

PAUL MONTIQUE,
        also known as "Shawn Patterson Scott,"

           Defendant.

– – – – – – – – – – – – – – – – – –X


# MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTIONS IN LIMINE


                    ROBERT L. CAPERS
                    UNITED STATES ATTORNEY
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201


Alicia N. Washington
Assistant U.S. Attorney
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motions in limine in advance of trial in the above-referenced case, which is scheduled to begin on July 11, 2016.  The government seeks to (1) introduce evidence that the defendant (i) used Shawn Patterson Scott's name to obtain identification documentation other than a fraudulent passport (and application) and when identifying himself to law enforcement and (ii) was deported twice from the United States; (2) preclude the defendant from soliciting his own self-serving statements during cross-examination of governments witnesses and otherwise compelling the introduction of those statements at trial; (3) introduce evidence that the defendant pleaded guilty to passport fraud; (4) introduce evidence that Shawn Patterson Scott is a real person through the testimony of law enforcement witnesses; and (5) cross-examine the defendant, to the extent he testifies, regarding his attempted illegal reentry and passport fraud, his prior acts involving the use of Scott's and another individual's names, his prior two deportations, and his use of aliases.

## SUMMARY OF THE CASE

On or about September 26, 2002, the defendant was removed from the United States and deported to Jamaica, his country of citizenship.  His removal was based upon his October 9, 1998 conviction for Assault in the Second Degree, in violation of New York Penal Law § 120.05(1), an aggravated felony.  Following his 2002 removal, the defendant entered the United States without inspection at an unknown place and at an undetermined date.  On or about February 14, 2014, the defendant was arrested in Massachusetts, wherein he told law enforcement his name was Shawn Scott.  The defendant's prior 2002 removal order (in his own name) was reinstated, and the defendant was removed from the United States on or about April 24, 2014 and deported to Jamaica.

On or about January 31, 2016, the defendant arrived at John F. Kennedy International Airport aboard Jet Blue flight number B6 60 from Kingston, Jamaica.  The defendant presented a valid United States passport which bore his photograph and which had been issued on October 22, 2012 in the name of Shawn Patterson Scott.  During inspection at a primary booth, a Customs Border Protection ("CBP") officer determined that the defendant was a match to a lookout which had been posted by Immigration and Customs Enforcement.  The lookout indicated that the defendant's real name was Paul Montique and that he was a previously deported alien.  As a result of the lookout, the defendant was referred to secondary passport control for further inspection, wherein CBP officers conducted a fingerprint examination resulting in a positive match for the criminal history associated with the defendant, Paul Montique, and not with the criminal history associated with Scott.

2

CBP officers then advised the defendant of his <u>Miranda</u> rights and he made the following statements in sum and substance.  The statements were recorded on videotape.

- The defendant initially stated that his name was Shawn Patterson Scott.

- The defendant stated that he wanted to "stop playing games" and that his true name was actually Paul Montique.

- The defendant admitted that his date of birth is March 14, 1973 and that he is a Jamaican citizen with no claim to U.S. citizenship.

- The defendant admitted that the passport he used to enter the United States contained his photograph.  The defendant claimed that he paid an individual named "Ron" the sum of $10,000 to obtain the passport as well as other identification documents.

- The defendant admitted to using the passport two times prior to January 31, 2016.

- The defendant stated that he did not know Scott and did not know if Scott was a real person.

The defendant was subsequently arrested.  CBP seized the following items from the defendant incident to his arrest: a 2013 Rhode Island driver's license with the defendant's photograph; a 2015 Rhode Island identification card with the defendant's photograph; a debit card; a credit card; a Social Security card; and a birth certificate.  <u>All</u> of these items were in the name of Shawn Patterson Scott or Shawn Scott.  Subsequent investigation revealed that the defendant also obtained a 2012 Rhode Island identification

3

card in the name of Shawn Patterson Scott, and that the defendant used the 2012 Rhode Island identification card to obtain the United States passport that is the subject of the above-referenced indictment.  Subsequent investigation also revealed that the defendant obtained a replacement Social Security card in Scott's name.

On February 11, 2016, the defendant was indicted by a grand jury in the Eastern District of New York for attempted illegal reentry, passport fraud and aggravated identity theft.  See Docket Entry No. 5.  On June 20, 2016, the defendant pleaded guilty to Counts One and Two of the above captioned-indictment: attempted illegal reentry and use of a passport secured by false statements.  See Docket Entry No. 25.  The sole count being tried on July 11, 2016 is Count Three, Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.

MOTIONS IN LIMINE

I.   Evidence of the Defendant's Prior and Repeated Use of Shawn Patterson Scott's Identity
     and Prior Deportations is Admissible Without Regard to Rule 404(b) and, in the
     Alternative, Pursuant to Rule 404(b)

     A. Facts

            The government seeks to introduce at trial evidence that the defendant used

     Shawn Patterson Scott's name and identity to obtain identification documentation other than

     the fraudulent passport, specifically that the defendant obtained a 2012 Rhode Island

     identification card, a 2013 Rhode Island driver's license, a 2015 Rhode Island identification

     card, a Social Security card, a birth certificate, a debit card and a credit card, all in the name

     of Shawn Patterson Scott.   The Rhode Island identification documents all bear the

     defendant's photograph.  The government also seeks to introduce evidence that the defendant

     identified himself as Shawn Scott in connection with his 2014 arrest in Massachusetts and

     that the defendant was deported twice from the United States.[1]

     B. Analysis

            1. Evidence of the Defendant's Prior and Repeated Use of Shawn Patterson Scott's
               Identity is Admissible To Prove Aggravated Identity Theft Without Regard to
               Rule 404(b)

            As an initial matter, although Federal Rule of Evidence 404(b) generally

     governs the admission of evidence regarding a defendant's other crimes, wrongs or acts, the

     Second Circuit has long held that "[e]vidence of uncharged criminal conduct is not evidence

     _____

            [1] At this time, the government seeks only to introduce the fact of the defendant's prior
     deportations, not their bases.  The government reserves its right to request leave to introduce
     the bases for those deportations if the defendant opens the door to that evidence.

                                          5

of 'other crimes, wrongs, or acts' under Rule 404(b) if that conduct arose out of the same transactions or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (citation and internal quotation marks omitted).

Here, evidence of the defendant's obtaining and possessing various Rhode Island identification cards in Scott's name, one of which he would eventually use to obtain a U.S. passport, and the other documents the defendant obtained in Scott's name, are inextricably intertwined with the aggravated theft charge itself.  See, e.g., United States v. Perez-Rodriguez, No. 08 CR 351, 2009 WL 104315, *4 (N.D. Ill. Jan. 14, 2009) (where the defendant was charged with passport fraud and aggravated identity theft, evidence of the defendant's prior Social Security card and passport applications was admissible as "inextricably intertwined" with instant charges because "the absence of such evidence would create a chronological or conceptual void in the story of the crime'")  (citation and internal quotation marks omitted)).

In fact, the government anticipates that the central, disputed issue at this trial will be whether the defendant knew that Shawn Patterson Scott was a real person.  See Flores–Figueroa v. United States, 556 U.S. 646 (2009) (aggravated identity theft charge requires proof that the defendant knew that the identification documents he used to obtain a passport belonged to a real person, not just that they were counterfeit.)  As such, the defendant's prior and repeated use of and access to Scott's identity as demonstrated by the

6

identification cards, bank cards and other personal documents he possessed in Scott's name, as well as his use of Scott's name when he was arrested in Massachusetts in 2014, is evidence that the defendant knew Scott was a real person, and that he knew he could rely on this real identity to enter the United States because he had relied on it for important transactions and privileges in the past.  See United States v. Pichardo, 595 Fed App'x 19, 21 (2d Cir. 2014) (noting defendant admitted to paying $900-$1,000 for Gascot's birth certificate and social security card and stating that  the defendant's "'repeated and successful use of Gascot's personal identification information ... underscores his reliance on and confidence in the use of [that] identity as the identity of a real person'" (citing United States v. Doe, 661 F.3d 550 (11th Cir. 2011)); United States v. Doe, 661 F.3d 550, 562-63 (11th Cir. 2011) ("a defendant's repeated and successful testing of the authenticity of [the] victim's identifying information . . . is powerful circumstantial evidence that [he] knew the identifying information belonged to a real person as opposed to a fictitious one").

> 2.   Evidence of the Defendant's Prior and Repeated Use of Shawn Patterson Scott's Identity and Prior Deportations is Admissible under 404(b)

> Federal Rule of Evidence 404(b), provides in relevant part:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasions the person acted in accordance with that character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).  The Second Circuit has adopted "an inclusionary approach" to evaluating Rule 404(b) evidence, which allows evidence to be received at trial "for any

purpose other than to show a defendant's criminal propensity." United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (quoting United States v. Pitre, 960 F.2d 1112, 1118 (2d Cir. 1992)).  Such evidence is correctly admitted if: (1) it is offered for a proper purpose; (2) it is relevant to a disputed trial issue; (3) its probative value substantially outweighs any possible prejudice; and (4) the trial court administers an appropriate limiting instruction.  See United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003).

Even if the evidence of the defendant obtaining and possession various Rhode Island and other identification documents in Scott's name, and his use of the name upon arrest, were not admissible as evidence of the charged crime, it is admissible under Rule 404(b) as highly relevant to the likely disputed trial issue of knowledge.

Likewise, the defendant's prior two deportations demonstrate the defendant's motive, intent and knowledge in using the Scott passport to commit the instant offense. From the fact that he had previously been deported – and snuck back into the United States – a jury could infer that the defendant knew that his best and only chance for re-entry was to use the identity of a real person.  See Castillo v. United States, 2011 WL 4592829, at *9-10 (E.D.N.Y. Sept. 30, 2011) (finding circumstantial evidence that petitioner had entered the U.S. legally before, was familiar with border checks and had been the subject of those checks before was sufficient to infer that he "knew his only chance for re-entry was to use the identity of a real person already in the system" and that had to be the kind of "false passport identity he paid handsomely to obtain"); see also United States v. Popow, 821 F.2d 483, 488 (8th Cir. 1987) (affirming the trial court's admission of the defendant's prior deportations as

8

evidence of the defendant's motive, intent, and knowledge in using a false identity at the U.S. border).

The probative value of the evidence herein far outweighs any risk of unfair prejudice and, as a result, its admission would not offend Rule 403. Its probative value is clear – it tends to prove what will likely be the central issue at trial: whether the defendant knew that Shawn Patterson Scott was a real person. In contrast, any risk of unfair prejudice can be effectively mitigated by a cautionary instruction limiting the jury's consideration of the 404(b) evidence to the purpose for which it is offered, both at the time the evidence is received and during the Court's final charge. See, e.g., United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996); United States v. Martino, 759 F.2d 998, 1004 (2d Cir. 1985).

Accordingly, the government should be permitted to introduce evidence of the defendant's prior and repeated use of Scott's identity as well as the defendant's prior two deportations.[2]

## II.   The Defendant is Not Entitled to Solicit His Own Self-Serving Statements from Government Witnesses

As set forth above, the defendant made certain statements to law enforcement on January 31, 2016. The government anticipates introducing all of the defendant's above-

---

[2] In 2009, the defendant also submitted a passport application in the name of Christopher Baxter, another United States citizen, to the United States Department of State. At this time, the government does not seek to introduce that evidence pursuant to Rule 404(b), see United States v. Miller, 641 F. Supp. 2d 161 (2009) (DLI) (finding defendant's prior acquisition of fraudulent passport was probative of motive but that the probative value was outweighed by prejudicial value), but reserves the right to seek introduction of this evidence if the defendant renders its probative value more weighty than the risk it prejudices him unfairly.

referenced statements through the testimony of a CBP officer and by video recording at trial, except for the defendant's self-serving statements that he did not know that Scott was a real person. The defendant should be precluded from soliciting those statements on cross-examination. Likewise, the completeness doctrine does not require the government to introduce those self-serving statements alongside the defendant's inculpatory statements.

It is well established that the defendant's own statements are hearsay and, thus, inadmissible. United States v. Kadir, 718 F.3d 115, 124 (2d Cir. 2013) ("A defendant may not introduce his own prior out-of-court statements because they are 'hearsay'"); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). Any attempt by the defendant to offer his prior statements at trial would amount to nothing more than an impermissible "attempt to get [his] side of the [] story in front of the jury without him testifying and opening him up to cross-examination." United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004).

Further, the government is under no obligation to offer exculpatory statements of a defendant when it offers inculpatory admissions. See United States v. Johnson, 507 F.3d 793 (2d Cir. 2007) (holding that the court properly bifurcated a defendant's post-arrest statement and precluded the defense from introducing a self-serving portion of the defendant's post-arrest statement); United States v. Branch, 91 F.3d 699, 728 (5th Cir. 1996) (finding that "self-serving [exculpatory] statement that does not contradict, explain, or qualify the rest of the statement" did not need to be offered by the government under the rule

of completeness when the government offered inculpatory statements); United States v. Smith, 794 F.2d 1333, 1335-36 (8th Cir. 1986) (holding that the district court did not err in precluding cross-examination on portions of post-arrest statement describing relationship to co-defendant and implicating co-defendant when government offered admission that defendant had been present at time of co-defendant's arrest).

It is true that under the completeness doctrine of Rule 106, "an omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) (internal citation and quotation marks omitted); see generally United States v. Alvarado, 882 F.2d 645, 650 n.5 (2d Cir. 1989) (Rule 106 "is stated as to writings in Fed. R. Evid. 106, but Fed. R. Evid. 611(a) renders it substantially applicable to oral testimony"). "The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." Marin, 669 F.2d at 84-85. The burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the government intends to offer. United States v. Glover, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.") The district court has broad discretion in applying the completeness doctrine.

11

See Jackson, 180 F.3d at 73 (district court's application of rule of completeness is reviewed only for abuse of discretion).

   Here, the government intends to elicit testimony and play portions of a video recording regarding statements the defendant made while in CBP custody.  Because the defendant's self-serving statements regarding his knowledge as to whether Shawn Patterson Scott is a real person do not contradict, explain or qualify the statements the government intends to introduce, the defendant should be precluded from attempting to elicit those statements during cross-examination of the government's law enforcement witnesses.

III. The Government Should Be Permitted to Introduce Evidence that the Defendant Pleaded Guilty to Use of a Passport Secured by False Statements

   As set forth above, on June 20, 2016, the defendant pleaded guilty in this Court to use of a passport secured by false statements in violation of 18 U.S.C. § 1542 (hereinafter "passport fraud").  See Docket Entry No. 25.  The government seeks to introduce at trial the transcript of that plea.

   In order to prove that the defendant committed aggravated identity theft in violation of 18 U.S.C. § 1028A, the government must show that the defendant "in relation to [a] felony violation enumerated in subsection (c)" knowingly transferred, possessed or used, without lawful authority, a means of identification of another person.  Passport fraud is one of those enumerated offenses.  Id.  Because the defendant's plea of guilty to passport fraud proves an element of the trial count, it should be admitted.  See Fed. R. Evid. 401.

   Moreover, the transcript of that plea is admissible without regard to Rule 404(b), based on the factors set forth in Carboni.  204 F.3d 39, 44 (2d Cir. 2000).  The

defendant's guilty plea for passport fraud stems from his use of a valid United States passport in the name of Shawn Patterson Scott and that contained Shawn Patterson Scott's personal, identifying information, at JFK airport on or about January 31, 2016.  The aggravated identity theft charge stems from the same event.  Therefore, the defendant's plea of guilty to passport fraud arises out of the same transaction, is inextricably intertwined with the evidence regarding the charged offense and is necessary to complete the story of the crime on trial.   Accordingly, the government should be permitted to use the defendant's guilty plea to passport fraud as direct evidence of aggravated identity theft.  Cf. United States v. Reed, 2012 WL 928259, at *3 (E.D.N.Y. Mar. 19, 2012) (admitting plea minutes as direct evidence of a conspiracy where the crimes to which the defendant pleaded guilty occurred during the charged conspiracy itself).

IV.   Witness Testimony that Shawn Patterson is a Real a Person is Admissible

The government intends to introduce at trial the testimony of a law enforcement witness that Shawn Patterson Scott is a real person.  The Court should permit the government to do so because the testimony is relevant to proving that Shawn Patterson Scott is a real person as required by the aggravated identity theft charge.   See United States v. Lewis, No. 08-CR-00274 (BMC) (E.D.N.Y. 2009) (permitting, in an identity theft case, a law enforcement agent to testify that she interviewed the individuals whose identities the defendant stole thereby confirming their existence).[3]

_____

[3] The Second Circuit found that this evidence, together with other evidence, was sufficient to affirm the defendant's conviction.  United States v. Lewis, 408 Fed. Appx. 423, 425 (2d. Cir. 2010).

13

V.    The Government Should be Permitted to Cross-Examine the Defendant Regarding
His Guilty Pleas to Attempted Illegal Reentry and Passport Fraud, False Statements
Made in Connection with His 2002 Deportation, Other Similar Acts and Use of
Aliases

      Pursuant to Federal Rule of Evidence 608, if the defendant testifies at trial, the

government should be permitted to cross-examine the defendant regarding (1) his June 20,

2016 guilty pleas to attempted illegal reentry and passport fraud;[4] (2) false statements he

made to immigration authorities in connection with his 2002 deportation; (3) his prior

submission of a 2009 passport application in the name of Christopher Baxter; and (4) his use

of aliases.

      Under Rule 608(b), a witness's character for truthfulness may be impeached

on cross-examination by introducing evidence of specific instances of conduct if the

evidence is "probative of the character for truthfulness or untruthfulness."  Fed. R. Evid.

608(b); see United States v. Desposito, 704 F.3d 221, 233 (2d Cir. 2013).

      Here, in connection with his guilty plea to attempted illegal reentry and

passport fraud, the defendant admitted that he attempted to enter the United States using a

valid United States passport that did bear his true name nor contain his personal, identifying

information.  In connection with his 2002 deportation proceedings, the defendant provided

immigration authorities with false information regarding his place of birth.  Moreover, in

---

[4] Guilty pleas to criminal charges do not qualify as convictions under Federal Rule of
Evidence 609 until sentence is imposed.  See United States v. Harris, 512 F Supp. 1174,
1175 (D. Conn. 1981) (citing United States v. Vanderbosch, 610 F.2d 95, 97 (2d Cir. 1979)
and United States v. Semensohn, 421 F.2d 1206, 1207-08 (2d Cir. 1970)).

2009, the defendant submitted a passport application to the State Department with his photograph but with the birth certificate and personal, identifying information of an individual named Christopher Baxter.  Evidence that the defendant has repeatedly used fake names, fraudulent identification and provided false information to governmental authorities demonstrates that the defendant has a long history of being untruthful, and should be admissible to impeach his testimony.  Bonilla v. Jaronczyk, 354 F. App'x 579, 583 (2d Cir. 2009) ("On cross-examination of Bonilla, defendants were permitted to inquire into specific instances of conduct bearing on Bonilla's 'character for truthfulness or untruthfulness'. . . . Questions regarding Bonilla's alleged use of false papers to reenter the United States illegally clearly satisfied this standard.") (internal citations omitted); United States v. Walia, 2014 WL 3734522, at *15 (E.D.N.Y. July 25, 2014) ("To the extent the government seeks to cross-examine Defendant on his use of . . . false identification documents, such inquiry is a proper basis for cross-examination under [Rule 608(b)].")); Hernandez v. Kelly, 2011 WL 2117611, at *3-4 (E.D.N.Y. May 27, 2011) (allowing "evidence of the plaintiff's illegal status and immigration history, including his overstay of a visa and his prior conviction for illegal reentry into the U.S. after being deported" for purposes of impeachment under Rule 608(b)(1)).

Moreover, in connection with prior arrests, the defendant has used the following aliases:  Shawn Scott, Johnny Lee Knight and Christopher Baxter.  "The use of an alias goes to credibility and truthfulness" and is thus a proper subject of cross-examination under Rule 608.  Walia, 2014 WL 3734522, at * 15  (internal quotation marks omitted);

15

Hernandez, 2011 WL 2117611, at *4; Fletcher v. City of New York, 54 F.Supp.2d 328, 333 (S.D.N.Y.1999) (questioning about aliases allowed under Rule 608(b) as long as questioning did not elicit "the fact that plaintiff was arrested and/or convicted for prior criminal conduct in connection with the use of these aliases").  Accordingly, the government should be permitted to cross-examine the defendant regarding his use of aliases.

CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court grant the government's motions in their entirety.


Dated:          Brooklyn, New York
                July 7, 2016

                                        Respectfully submitted,

                                        ROBERT L. CAPERS
                                        United States Attorney

                                By:      /s/ Alicia N. Washington
                                        Alicia N. Washington
                                        Assistant U.S. Attorney
                                        (718) 254-6009


cc:     Clerk of the Court (CBA) (by ECF)
        Kannan Sundaram, Esq. (by Email and ECF)


16